UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANILO DE PAULA VIEIRA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 21-10697-WGY |
| DJAIANE AQUINO DE SOUZA, | ) | |
| | ) | |
| Respondent. | ) | |

YOUNG, D.J.                                    July 15, 2021

**FINDINGS OF FACT & RULINGS OF LAW**

In keeping with the timing order entered by the United States

Court of Appeals for the First Circuit, Order of Court (July 12,

2021), ECF No. 25, and pursuant to Fed. R. Civ. P. 52, the Court

enters the following findings of fact and rulings of law.

I.      **INTRODUCTION**

On April 27, 2021, petitioner Danilo De Paula Vieira

("Vieira") filed a complaint for return of a minor child (the

"Minor") to Brazil pursuant to the Hague Convention on the Civil

Aspects of International Child Abduction (the "Hague

Convention") through the International Child Abduction Remedies

Act ("ICARA"). See Hague Convention on the Civil Aspects of

International Child Abduction, Oct. 25, 1980, T.I.A.S. No.

11670, 1343 U.N.T.S. 89 ("Hague Convention"); 22 U.S.C. §§ 9001-

10 (formerly cited as 42 U.S.C. §§ 11601-10). Vieira also filed

an emergency ex parte motion, which Judge Saris allowed in part,
ordering respondent Djaiane Aquino De Souza ("De Souza") not to
remove the Minor from Massachusetts until further order of the
Court.  Order at 1, ECF No. 5; Pet'r's Redacted Emergency Ex-
Parte Mot. Prelim. Restraining Orders & Mandatory Orders 4-5,
ECF No. 2.

This Court promptly scheduled a hearing for June 17, 2021,
at which Vieira's counsel and De Souza, representing herself
without an interpreter, were present.  See Elec. Notice (June
17, 2021), ECF No. 19.  As is its wont, this Court collapsed the
further hearing on the preliminary injunction with trial on the
merits pursuant to Federal Rule of Civil Procedure 65(a).  A
bench trial was held on July 1, 2021.  Vieira was present by
video and testified through an interpreter.  De Souza attended
and testified through an interpreter.  This Court found and
ruled in favor of Vieira after taking evidence on the matter.
Elec. Clerk's Notes (July 1, 2021), ECF No. 20.

The Court made findings of fact and rulings of law at the
trial, Bench Trial Tr. 42:19-44:11, ECF No. 26, but reserved the
right to enter more detailed findings and rulings, which it now
does.

## II.  FINDINGS OF FACT

### A.    The Relationship

Sometime between April 2008 and April 2009, Vieira and De Souza began a relationship in or around Minas Gerais, Brazil. Bench Trial Tr. 15:14-16:2, 20:21-20:22, ECF No. 26.  Over the next eleven years, the parties ended and rekindled their relationship frequently but never remained separated for more than three weeks.  Id. 17:1-18:11, 21:1-21:3.  The two had a child together, the Minor, in January of 2014.  Id. 15:17-15:24. The Minor is now seven years old.  Id.  During a period of separation, Vieira had another child (the "half-sister") outside the relationship.  Id. 17:19-18:2.  The half-sister is now six years old.  Id.  Despite Vieira fathering a child outside this relationship and incidents of domestic verbal abuse, some of which involved the police, the parties continued their relationship.  Id. 21:1-3, 22:10-22:20, 29:8-29:25.  Vieira would threaten De Souza, and on one occasion he broke her telephone, but the abuse never escalated to physical abuse.  Id. 38:1-38:4, 21:1-21:3, 29:8-29:19.  De Souza later sought psychiatric treatment for the verbal abuse.  Id. 37:21-37:25.

In 2017, one such incident of domestic abuse led to De Souza getting a restraining order against Vieira.  The parties had been staying at De Souza's grandmother's house and began to argue while getting ready for work one morning.  Id. 22:8-22:14.

The parties were yelling at each other and Vieira took the

Minor, put the Minor in the car with De Souza and Vieira, and

drove in a dangerous manner while threatening De Souza.  Id.

29:15-29:19.  When Vieira returned to the house, the police

greeted Vieira and took him to the police station.  Id. 22:13-

23:20, 29:20-29-25.  The parties later rekindled their

relationship, and De Souza revoked the restraining order.  Trial

Ex. 3, Cancellation of Restraining Order at 1.

De Souza moved to Massachusetts in December 2018 without

the Minor or Vieira.  Bench Trial Tr. 33:2-33:10.  The

relationship ended in April 2020, when De Souza's application

for a fiancé visa on behalf of Vieira was denied and De Souza

refused to return to Brazil.  Id. 18:9-18:21.  De Souza falsely

represented that Vieira has a criminal record in Brazil.  See

id. 18:17-19:1, 21:21-22:7; Trial Ex. 5, Background Check at 1.

**B.    No Harm to the Minor**

Both Vieira and De Souza are named on the Minor's birth

certificate as parents.  Trial Ex. 1, Translated Birth

Certificate at 1.  No custody order exists.  Bench Trial Tr.

36:8-38:10.  The Minor remained in the custody of Vieira after

De Souza left Brazil in 2018, and the Minor continued to live

with Vieira up until the Minor arrived in Massachusetts, without

Vieira's permission, in 2020.  Id. 36:8-37:17.  Vieira is

employed as a system analyst at a university, earning

[4]

approximately $14,000 a year.  Id. 28:1-28:8.  No evidence was
presented that Vieira ever hurt, threatened, mistreated, or
provided insufficient care for the Minor.  Id. 36:11-38:10.  The
Minor received appropriate medical care, including a recent
adenoidectomy and tonsillectomy.  Id. 23:23-24:9.  The Minor
attends school, only speaks Brazilian Portuguese, and is close
with the half-sister.  Id. 16:6-16:25, 17:19-18:8.  Furthermore,
the Minor has a place to stay with Vieira and his new fiancée.
Id. 14:3-14:15.  With the exception of the one incident during
which the Minor was in the car with Vieira and De Souza while
Vieira was driving dangerously,[1] there is no evidence that
supports De Souza's belief that the Minor is in danger from
Vieira.

### C.    The Removal and Retention

On November 22, 2020, the Minor's maternal aunt offered to
bring the Minor to a medical appointment regarding the Minor's
recent adenoidectomy and tonsillectomy.  Id. 24:3-24:25.  Vieira
consented and thought the aunt took the Minor to the appointment
and to visit her maternal family after the appointment.  Id.
Instead of going to her appointment, the aunt put the Minor on a
flight to Massachusetts and stopped answering Vieira's phone

---

[1] De Souza also testified that the Minor has observed Vieira
commit violent acts against Vieira's mother but failed to
provide any further evidence or details regarding what Vieira
did or what the Minor witnessed.  Id. 31:6-31:7.

calls.  Id.  Vieira immediately contacted local authorities to have the Minor returned.  Id. 25:1-25:23.

The parties previously had discussed the subject of the Minor traveling to Massachusetts, and Vieira objected every time.  Id. 37:11-37:17.  On November 23, 2020, De Souza called Vieira to tell him that the Minor was with her and would not be returning to Brazil.  Id. 24:22-24:25.  De Souza continues to limit Vieira's opportunities to communicate with the Minor, often allowing days to pass between opportunities to communicate.  Id. 26:6-27:15.  On May 21, 2021, almost a month after Vieira initiated the present action, De Souza received a restraining order from the Massachusetts Trial Court against Vieira, id. 34:11-35:1, which purports to award custody to De Souza, see Trial Ex. A, Abuse Prevention Order at 1.[2]

## III. RULINGS OF LAW

ICARA is clear -- this Court's authority is limited to determining the party's "rights under the Hague Convention and

---

[2] Such an order is inconsequential to this matter, as the determination made under the Hague Convention and ICARA is not custody, but rather the appropriate jurisdiction for custody proceedings.  Nicolson v. Pappalardo, No. 09-cv-541-P-S, 2009 WL 5227666, at *8 (D. Me. Dec. 28, 2009) ("The purpose of a Hague Petition is to determine the appropriate jurisdiction for custody proceedings, not to determine the merits of the custody dispute.  Accordingly, it would undermine the purpose of a Hague Convention petition if the petition were barred by a state court custody determination."); see also Holder v. Holder, 305 F.3d 854, 865 (9th Cir. 2002); Silverman v. Silverman, 338 F.3d 886, 895 (8th Cir. 2003).

not the merits of any underlying child custody claims." 22

U.S.C. § 9001(b)(4). The Hague Convention applies because the

Minor is seven years old and both Brazil and the United States

are signatories. See Hague Convention art. 4 ("The Convention

shall cease to apply when the child attains the age of 16

years."); Bench Trial Tr. 15:17-15:24. Article 3 of the Hague

Convention provides the following:

> The removal or the retention of a child is to be
> considered wrongful where --
>
> a) it is in breach of rights of custody attributed to
> a person, an institution or any other body, either
> jointly or alone, under the law of the State in which
> the child was habitually resident immediately before
> the removal or retention; and
>
> b) at the time of removal or retention those rights
> were actually exercised, either jointly or alone, or
> would have been so exercised but for the removal or
> retention.

Hague Convention art. 3. Article 5(a) defines custody rights to

"include rights relating to the care of the person of the child

and, in particular, the right to determine the child's place of

residence . . . ." Id. art. 5(a).

Brazil was the Minor's "State in which the child was

habitually resident immediately before the removal [and]

retention . . . ." See id. arts. 3, 5(a). Vieira was

exercising his "rights of custody" over the Minor, but De

Souza's removal and retention of the Minor have prevented Vieira

from exercising those rights. See id. Therefore, both De

[7]

Souza's removal of the Minor from Brazil through the actions of the aunt and De Souza's continued retention of the child are "wrongful" under Article 3. See id.

When less than one year has elapsed from the initial wrongful removal or retention, Article 12 mandates the return of the child. Id. art. 12. Article 13 provides exceptions to Article 12's mandate where (1) the petitioner "was not actually exercising custody rights . . . or had consented to or subsequently acquiesced in the removal or retention," (2) "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation," and (3) "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Id. art. 13. The burden falls on the petitioner to establish by clear and convincing evidence that the child is at grave risk, or by a preponderance of evidence that one of the other exceptions apply. See 22 U.S.C. § 9003(e)(2); Walsh v. Walsh, 221 F.3d 204, 219 (1st Cir. 2000). De Souza fails to sustain this burden.

It is clear from the record that Vieira was exercising his custody over the Minor at the time the Minor was removed from Brazil. See supra Section II.B. It is also clear from the record that the Minor is seven and there is no evidence that the

[8]

Minor has attained an age and degree of sufficient maturity to appropriately take his or her views into account. Bench Trial Tr. 15:17-15:24. "Therefore the sole question is whether it has been determined that [the Minor] would be at significant risk were [he or she] to be returned to Brazil[.]" Id. 43:11-43:13.

### A. De Souza Failed to Meet Her Burden of Establishing Grave Risk to the Minor.

From the bench, the Court concluded that a grave risk would not befall the Minor upon his or her return to Brazil because none of the allegations of domestic abuse were directed at the Minor. Id. 43:11-43:20; Elec. Clerk's Notes (July 1, 2021). De Souza failed to demonstrate that there existed "a grave risk that [the Minor's] return would expose [the Minor] to physical or psychological harm" because she proffered no evidence that Vieira ever threatened or abused the Minor, and there is no evidence that the Minor suffers from any form of trauma. See Hague Convention art. 13(b); 22 U.S.C. § 9003(e)(2)(A); Walsh, 221 F.3d at 217; Application of Blondin v. Dubois, 78 F. Supp. 2d 283, 294 (S.D.N.Y. 2000) (considering the trauma suffered by the children and their recovery under Article 13(b)), aff'd sub nom. Blondin v. Dubois, 238 F.3d 153 (2d Cir. 2001). Unlike in Walsh v. Walsh, where the petitioner exhibited a significantly more violent nature that resulted in "bloody and severe" assaults as well as a "more generalized pattern of violence,

including violence directed at his own children," 221 F.3d at 220-21, De Souza failed to proffer sufficient evidence of any violent or abusive conduct towards anyone other than herself. Even taking into account that "credible social science literature establishes that serial spousal abusers are also likely to be child abusers," and that "both state and federal law have recognized that children are at increased risk of physical and psychological injury themselves when they are in contact with a spousal abuser," id. at 220, De Souza fails to meet her burden because there is simply no evidence of such phenomena here.[3]

### B.   Costs and Fees

Vieira requested that the Court order De Souza to pay the cost of the Minor's transportation as well as Vieira's expenses, costs, and legal fees.  See 22 U.S.C. § 9007.  The Court found that it was clearly inappropriate to impose those cost and fees upon the pro se De Souza in the absence of evidence that she had a job or how she paid for her living arrangements.  See id.  The Court found that Vieira had sufficient funds to pay for the Minor's return, ordered Vieira to pay for the Minor's return to

---

[3] This Court in no way condones Vieira's verbal abuse of De Souza or the destruction of her phone yet, given the facts, the Court must execute its duty.  It does so with the utmost faith in its colleagues in Brazil that they will reach a just resolution regarding the Minor's custody.

[10]

Brazil, and did not make provision for legal fees and costs.
See Elec. Clerk's Notes (July 1, 2021); Bench Trial Tr. 44:2-
44:6.

## IV. CONCLUSION

For these reasons, the Court found that Vieira was not a
threat to the Minor and, pursuant to the Hague Convention and
ICARA, ruled that the Minor be returned to Vieira's custody in
Brazil within 30 days of July 1, 2021.  Elec. Clerk's Notes
(July 1, 2021).

Respectfully submitted,

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass. 1841-
1865), would sign official documents. Now that I'm a Senior
District Judge I adopt this format in honor of all the judicial
colleagues, state and federal, with whom I have had the
privilege to serve over the past 43 years.